Good morning, Your Honors. May it please the Court, Andrew M. Dudley on behalf of the Trustee Edward J. Maney, appellant in this matter. Today I'd like to be reserving five minutes of my original argument for amicus from the Department of Justice and five minutes for rebuttal. What we have today for you is a case regarding the recent bankruptcy abuse prevention. You're Dudley, right? Yes, Your Honor. And then Mr. Linsky gets five. Yes, Your Honor. And then you get five for rebuttal. Yes, Your Honor. Okay. What we have here today is a case of first impression before this Court on the Bankruptcy Abuse Prevention and Consumer Protection Act, which was recently enacted by Congress in 2005. This act did not replace the bankruptcy code. Instead, it merely amended particular sections of that code. It's a case of first impression for any circuit court, I guess, isn't it? Yes, it is, Your Honor. Now, again, there has been one case in the Bankruptcy Appellate Panel in the First Circuit, but other than that, it's all been in the district in the, you know, in the bankruptcy courts themselves that have been deciding these issues. The two issues today are how long must a debtor propose a Chapter 13 plan for and how much must a debtor pay? Why don't you just enunciate each word? I have a little trouble. Nothing wrong with my hearing. There is, I'm not going to admit it. So just try and just let me hear every word that you say. I will do my best, Your Honor. Every word is important. Okay. The two issues, again, are concerning Section 1325B and the duration of a Chapter 13 plan and how much a debtor's plan payments must be. Well, the issue is whether under the amended plan, the new Act, under 1325B, whether the calculation of projected disposable income has changed so that whether the debtor indeed has any disposable income after necessary expenses is no longer relevant, if in the calculation under the form, which I think is B-22, there is no projected disposable income. And this lady is a nurse and she earns about $71,000 a year, so she's above a median debtor. And calculated on the form, let's see if we've got the facts straight. Calculated pursuant to 1325B and on Form B-22, she has no disposable income. That is correct. Negative $4. Actually, at the end of the month, she has a $1,500 disposable income and she proposes to pay $1,000 to her debtors over the period of five years to secure the discharge, right? Well, actually, Your Honor, the plan, the whole basis of the trustee's objection was that the debtor proposed $1,000 a month for only 36 months. Oh, for 36 months. Okay, I got the time wrong. Not for five years required under the statute. But she doesn't have to pay a dime if she doesn't have any projected disposable income. That's her position, right? Yes, Your Honor. What's wrong with that? Congress decided to change the concept of disposable income from cash in fists at the end of the month to a hypothetical B-22 calculation. If we respect Congress's will and intention in doing that, why don't we just say she doesn't have any disposable income? Therefore, it would be absurd to say that she has to make zero payments over three years or five years. Therefore, she should be discharged. Well, two reasons, Your Honor. Why would you look at, not a good expression, but a gift horse in the mouth? She doesn't have to pay anything. She said she'd pay $1,000 a month to the unsecured creditor. Well, to begin with, in Judge Gregerson's comment, $1,000 that she's paying per month isn't necessarily going to unsecured creditors. That's coming to the trustee. Oh, it's going to you guys, right. It's coming to the trustee, but out of that, it's being paid administrative expenses and secured by his priority claim. She doesn't have to do anything, does she? Well, the trustee would argue otherwise, Your Honor. I mean, the term disposable income. She has no disposable income. Exactly, but the statute says projected disposable income, and there is a difference between projected disposable income, which is a forward-looking, future-oriented number which includes a realistic view of what the debtor anticipates to receive under the plan. No, no, no, no, no. Take a step back, counsel. Don't you first have to determine what the CMI is, the current monthly income over six months? Yes, you do, Your Honor. Isn't that the number which is to be multiplied over the period of time? The current monthly income is your projected disposable income over the period of the project, which is the period of time that the debtor has to pay off pursuant to the plan. Well, the current monthly income, Your Honor, is, again, another specific definition that's been created in the new Magnitsky Abuse Prevention Consumer Protection Act amendments. That is simply the six months of income that has been received as wages. It's also additional income that is regularly paid to the debtor from other sources. The disposable income, however, is an entirely separate category, which is contained in 1325b2. Disposable income is the current monthly income, less the expenses from the Internal Revenue Service, national standards, local standards, other necessary expenses. Well, CMI, current monthly income, is how you calculate the gross figure for projected disposable income. The adjustments under the Internal Revenue Service give you the net figure of projected disposable income, correct? Well, the current monthly income multiplied into an annual basis provides a basis for determining the applicable commitment period, in other words, the duration of the plan. It's the current monthly income less those expenses come up with the disposable income, yes. My business mentality looks at gross net, right? Unfortunately, the bankruptcy code isn't quite that simple these days. Gross is the CMI. After you've taken away the IRS deductions, the net is the projected disposable income. It's the disposable income. Projected disposable income. And the projected disposable income is the result of the CMI less IRS over the period of the project. The trustee doesn't believe that it's strictly the disposable income as defined because projected does not necessarily mean multiplied by or the applicable commitment period. You want to take more evidence in as to what that person is actually going to receive over the period of time in order to arrive at disposable income. Exactly. We believe that the projected... For instance, if she's got an aunt who's a millionaire and is about to die and is going to leave her a big fortune, you want to take that into consideration. Well, that big fortune, that would be some future event that we wouldn't really consider. If she would get that inheritance, that would be something that would be property of the state. Suppose she had an annuity which would kick in in three years' time or one year' time. This contract would give her some compensation. You would take that as income, but it would not be CMI, would it? No, sir, it would not. It would not. Well, why don't we stick with what Congress wrote, not what the trustee would like Congress to approve? Well, we are attempting to stick with what Congress wrote. We would never attempt to go any beyond that. Is there any mention in 1325B that in addition to CMI, the trustee should take into consideration or the court should take into consideration miscellaneous income which is reasonably probable to be received by the debtor during the period of the program? Well, the definition of current monthly income, and again, these different definitions of current monthly income and disposable income and projected disposable income, current monthly income does include regular sources of income paid to the debtor on a regular basis. The projected, the inclusion of projected in front of disposable income indicates Congress's intent that a debtor who can pay be required to pay over that duration of the plan, which in this case and over median income, the applicable commitment period should be 60 months. Congress should have been aware that this negative number could have occurred on a mechanical, backwards-looking determination of what disposable income is. In order to resolve that, in order to effectuate their intent on eliminating bankruptcy abuse and requiring those debtors that could pay, included this prior term of projected disposable income, which would be... What would be given in this case to project any income other than what she had on the form that's provided here? Well, we think, quite honestly, Your Honor, the trustee probably would have confirmed this case at $1,000 at 60 months. It would have been a reasonable projection of... $1,000 for 60 months is okay, but $1,000 for three years is not, but just because... Well, the whole reason this case is before this Court was originally the trustee's objection to the 36-month duration. Yeah. But, you know, she does not pay anything, does she? As far as the trustee argument, yes, she does, because she has projected disposable income. Looking forward, that can be paid to unsecured creditors, especially when required... And when you're looking forward, what are you looking at? We're looking at, starting with the disposable income on Form 22-C, we're looking at pay stubs, we're looking at tax returns, we're looking at other sources of income that are available to the debtor that might be coming in, and particularly at I&J that show a more accurate picture of her income. But that is what the code calls for. Well, the trustee believes that the inclusion of projected disposable income, which was in the code prior to the bankruptcy amendments, and was viewed as Schedules I&J and a projection forward. Under this Chapter 13, can the trustee go in periodically and ask for a, you know, let's look at this again and see if there's any additional income this person is earning? Yes, indeed, Your Honor. In fact, the bankruptcy... But why doesn't that take care of your problem? Well, the bankruptcy code itself includes provisions for turnover of tax returns for income and expense, yearly income and expense reports from a debtor. There's also the 1329 modification provision, all which indicate that Congress was intending a forward-looking projection over a 60-month plan for over-median debtors. At this point, Your Honors, I'd like to turn to... Congress doesn't say that. We believe that Congress did say that in the plain language of the statute, Your Honor. And to view it as otherwise would produce an absurd result. For example, you would have a case where a debtor would have negative disposable income... Why is it an absurd result? She doesn't have to pay anything. And she says, well, you know, I'm frugal. They've got these national standards. I want to do something. So I'm going to make that sacrifice. And I'm going to pay out $1,000 a month. Well, Your Honor, if we were to accept the debtor's position on this, we could have a number of absurd results. First absurd result would be a debtor who has negative disposable income calculated with Form 22C, no administrative claims, no priority claims, no secured claims, and only unsecured claims, who could propose a plan with zero months and get a discharge in Chapter 13, a disguised Chapter 7 discharge. Following the debtor's argument, that could be a realistic occurrence. And certainly that cannot be... Well, the purpose of the bankruptcy laws is to give debtors a second chance. So doesn't this work in that direction? Well, the other intent of the Bankruptcy Abuse Prevention and Consumer Protection Act was to prevent bankruptcy abuse and to have debtors who have the ability to repay creditors to repay those creditors. Well, then they should have worked all those calculations out and those IRS and the rest of it differently. Well, unfortunately, Your Honor, the law is what it is. And we have to... We're saying that an application of the plain language of the statute would produce our result. And I'd like to share our time now with our counsel from the Department of Justice, Ms. Amicus. May it please the Court, I'm Isaac Litsky with the Department of Justice here on behalf of the United States. Amicus in this matter. As the Court has indicated, this is the first Court to address this issue, the proper construction of 1325B. And there are three different camps out there in the lower courts on how properly to construe the statute. I think the one thing that that sort of says unequivocally is, I hesitate to use the word sloppy, but it seems the statute is not crystal clear. The trustees, the United States trustees or the government's interest in this case is to assure that the rule of law announced leaves flexibility for bankruptcy courts, for district courts. Do you agree entirely with the trustee or just partially? No, we do not agree entirely with the trustee. Our position is... Slightly different. Slightly different. So the way I think about it, there are sort of two polar positions. One is Form 22, period. The other is Form 22 is always just one of the things that a bankruptcy court can look at. Our position, and we do think this is the best construction of the statute in light of the text itself and also in light of the history of the legislation. Our position is Form 22. There's no doubt that Congress intended the Form 22 calculation as a sort of back-of-the-envelope new way to calculate out this number. That's something that's new that's come about because of the new legislation. That's exactly right. The Form 22C. That came about because of the... I'm sorry? That came about because of the concern that people were abusing their credit cards. That was one of the underlying reasons for BAPCA. That was a big reason. Indeed, Your Honor. Right. And most of the significant BAPCA changes occur in the Chapter 7 context, most notably for this case in the 707B2A and B definition of expenses. And Congress sort of took a crack at a new way to handle these calculations and provided, as I like to think about it, a sort of back-of-the-envelope calculation. As we represent in our briefs, and I think the parties would agree, that sort of back-of-the-envelope calculation should suffice. We think it's presumptively appropriate in the majority of cases, likely in the overwhelming majority of cases. Our position here is a narrow one, and again, it isn't sort of indicating the rule of law that might be announced for future cases. Our position here is that where a party has raised or the bankruptcy court has reason to believe that that back-of-the-envelope calculation has no bearing on the actualities or the reality of the case before it, there's nothing that says that the bankruptcy court is confined, the bankruptcy court lacks the authority from considering additional information. So what happened here is we understand it was a flag was raised, said bankruptcy court was told, hey, we have the Form 22C calculation, and maybe that, you know, makes sense in the overwhelming majority of cases, but look, here's why in this case it doesn't at all approximate the reality of the situation, and the bankruptcy court here recognized that, said it doesn't approximate the reality. The bankruptcy court, however, construed the statute. We think, unfortunately, well, actually, in the bankruptcy court's own words, it felt obliged to adopt a sort of strained interpretation of the statute that produced, quote, ironic and unfortunate results. But that would have been easy for Congress to say. They would have said projected disposable income is calculated under Form 22. But the trustee can introduce evidence to rebut the presumption that Form 22 correctly calculates projected disposable income by introducing evidence showing what the actual disposable income is, period. Right? Didn't do that. I think, Judge Ferguson, you're absolutely right that that would have been a more artful and more sensible way to approach it. But when they don't do that, right, when they say this is a way to calculate projected disposable income, period, we have an ancient rule around here called expressio unias. When you express something once and you don't say anything different, that is everything you meant to express. Respectfully, Judge, that's, I think, where we would part company. There's no question that the statute embodies a definition of disposable income, which, as I've described it, implements this sort of back-of-the-envelope calculation. So that's definitely encompassed by the notion of disposable income. But the key provision here, 1325b1b, the provision that sort of does all the heavy lifting, does not speak merely of disposable income. It speaks of projected disposable income to be received, which will then be applied to make payments. So we think, in light of that language, it's pretty clear that Congress had in mind the Bankruptcy Court, and it's clear from the very nature of the bankruptcy enterprise that Congress had in mind the Bankruptcy Court determining what would be a sensible amount to be paid in the future. And, Judge Bea, you point to, I think, whether it was 1329 specifically or other ways in which a bankruptcy court might revisit the numbers. We think that perfectly supports the idea that we're trying to express here. That's to say, we don't think it makes sense to adopt a rule where a bankruptcy court must today put its, you know, put its blinders on, put sort of almost like an ostrich with its head in the sand and say, I'm only allowed to look at the 22C calculation today. Tomorrow, you can come back in under Section 1329 and show me how, again, this isn't the bankruptcy court's own words, show me how this Form 22C calculation doesn't bear any relationship to what's actually going on. So for, you know, for 24 hours or, you know, for whatever point in time the order survives, we'll go with the 22C calculation and then we'll abandon it. We don't think that there's any reason to construe the statute to do that in light of, again, those textual arguments. It talks about the projection of disposable income to be received, and then it contemplates that that will be applied. And to be clear, I don't the trustee's position at least, sorry, the government's position here, the United States' position here, at least is certainly neutral as to outcomes. It's not a – Kennedy, you read two substances into the word projected, not only a temporal substance, how long it's going to take, but also the possibility that the circumstances change during that temporal period, that you project a period of time and you project what circumstances might be during that period of time. I don't know if I'd put it exactly that way. I think it's clear that the overarching provision contemplates coming at some number which will represent funds that can, over the life of the period, will be received and will be applied. And you were taking the consideration as to what that amount of funds is, not only CMI, as the statute says, but whatever other evidence would reasonably be relevant to show the debtor's income. Our position is that the Form 22C calculation is presumptively the correct one, and there's no question that Congress intended that. We say where there are special circumstances or where there are reasons for a bankruptcy court to be concerned, that those – that back-of-the-envelope calculation has no bearing in the reality of the case. The Court is not – nothing in the statute confines the Court to that number. And getting back to an earlier point, if I may, it's a neutral position. It's not pro-debtor, anti-debtor. You know, there are hypotheticals on either side. One could imagine – this doesn't seem an unlikely situation at all – a Chapter – a Chapter 13 debtor who has a, you know, relatively substantial income loses that job the day before or the day after they file the petition, and the six-month historical calculation would reflect that income. So the proper number to be paid out under 1325B under the debtor's interpretation would include that income. Well, there's just no sense. That number – whatever the bankruptcy court says, whatever Form 22C shows, that number – those funds will not be received and they will not be applied because those funds don't exist. Kennedy. Is there a Bankruptcy Act proceeding to which you can point that would allow debtors, say, a year after the plan had been approved and no payments are being made monthly, to come back into bankruptcy and say, the debtor's situation has drastically changed. She's now, instead of earning 71,000, she's earning $710,000. Right. And we would like to amend the plan to provide for payment to the unsecured creditors. Is there such a provision? There is, Your Honor. I think – Why isn't that your answer? Well, that's not my answer for two reasons. First, Your Honor –  Is that what you're talking about? 1329 is certainly the provision that comes to mind. I hesitate to say that there are no other pertinent provisions, but 1329 certainly is dead on. I think, if anything, as I tried to convey earlier – well, two points. First, I think that bolsters the United States' position here because it seems, you know, ironic and unfortunate to quote the Bankruptcy Court to say, we have to live with the number today that we can change tomorrow because we know we can change it. And the key thing here is we're not in the situation where we're talking about an bankruptcy court. The very day it executes the 22C calculation, it knows that that calculation bears no reality to the actuality of the case. And the second answer – It bears reality to Congress. Sorry? It bears reality to Congress. Well, again, respect to Your Honor, the definition of disposable income is what it is. But the statute speaks to the projection of disposable income to be received, and it contemplates that those funds will be applied to make payments. So you sort of make – you sort of kind of throw out the rest of that provision in those – in these special cases where the presumptive 22C calculation bears no relationship to the actuality. You sort of throw out the entire force of the provision, and it's less than satisfying to say, well, we'll do that for a day, and tomorrow you can come back and amend the plan. And the second – the second point is that the 1325B provision speaks to the requirements in order to be able to pass a plan, in order to certify a plan. So under our construction of the statute, 1329 is not a sufficient answer because the plan would never be effective in the first place. You couldn't – you couldn't actually establish the plan because it would – But you want the period to run for five years and not for three. Actually, the – the government here takes no position on the issue of the – on the duration question briefed by the parties. All I can say is I'm not authorized to take any position on that duration question. I do think, however – I don't understand this. I mean – I mean, this – this sounds – here she is, and I didn't have to pay anything. She said, well, I'll pay a thousand a month to my unsecured creditors for three years. We also know that the creditors can come in and ask for a readjustment during that three-year period if something happens, if the person's income is increased. So that's what we have here. So what is the government complaining about? Well, Your Honor, respectfully, whether the debtor has to pay anything or not is the very question. So, you know, to pose it as we have a debtor who doesn't need to pay anything – Well, I'm looking at – I'm looking at this thing called reality, you know. Your Honor, respectfully, you know, the parties have taken three different positions on the proper construction of the statute, as have the bankruptcy courts below. And, you know, the trustee – the government here urges that it's as – it's as definitely the most reasonable, at least the interpretation that he used most closely to, the congressional intent, as embodied in that key provision, 1325. Congressional intent is just a fiction. Well, I'm sorry, as embodied in the – I asked one of my very best friends, who is a committee chairman, I said, what was your intent when you did that? He said, what do you mean? What was my intent when I voted for that? I said, well, you know, there's congressional intent. That's a big deal. Oh, it is? Yeah, okay. I didn't know that. I'll remember that next time. So we make up a lot of fiction. Can we dial in your friend and see if maybe we can get a statement on the intention? He's in Arlington. Oh, all right. You mentioned three positions. I've got the Form 22 position. Form 22, and that's the end of it. I've got the position Form 22 is one of the things you look at, but you don't admit other evidence. What's the third position? Is that? So as I understand it, the Chapter 13 trustee before the Court today's position is that a bankruptcy court should always look at a universe of factors, the Schedule I and J, Form 22C. The debtor's position is on sort of opposite end of the spectrum, which is Form 22C. It starts and ends there. The government's position is that the Form 22C calculation is certainly the presumptive number, barring some special circumstance, some reason, some conclusion on the part of a bankruptcy court like we have here that the 22C number bears no relationship to the actuality before the Court. We think 22C is clearly the way to go. Our point is a narrow one. Our point is that there — and these are sort of the hypotheticals we try to address in our brief to the Court. There — and this is why I sort of returned to the fact that the statute is perhaps a little sloppy. There is no doubt that there are cases where the 22C number produced will be nonsensical. It will have no bearing on which — on the funds that will actually be received and on the funds that will actually be paid to creditors. Kennedy. That's not the case here. That's just a — Bursch. Well, we don't take a position on the facts of this case. Kennedy. Okay. Bursch. And I know it's a lame answer. I feel lame saying it. But we all — our goal, our endeavor is to vindicate the legal proposition, you know, inasmuch as this Court is, again, the first circuit court to address the issue. And we think that the best way to give meaning to the plaintext of the — of the statute in context of the larger bankruptcy enterprise and the equitable nature of the inquiry, the best way to do that is to allow that, barring this presumption that 22C applies, for these special cases, there's nothing that strips a bankruptcy court of the authority to consider the broader reality. It's — there is no ostrich rule that the bankruptcy court has to stick its head in the sand. Kennedy. Okay. Bursch. Thank you. There's a section in the Justice Department on bankruptcy. I'm sorry? There's a section in the Department of Justice on bankruptcy. There's actually the United States Trustee's Office, Your Honor. But I work for the appellate staff of the Civil Division, and we represent the trustee in appellate litigation. Oh, I see. Okay. Thank you. Thank you. Mr. Nemmit. Good morning, Your Honor. Good morning. Question number one. Yes, Your Honor. If your client doesn't owe a dime under 1325B, why is she offering to pay $1,000 a month out of her hard-earned salary? Your Honor, that's a very simple reason. Your part of the payment under a Chapter 13 plan is not to only pay unsecured creditors. It is also to pay back administrative costs and secured claims. So there is more to this $1,000 a month being paid going to unsecured creditors. In the instant case, the debtor is paying approximately $10,000 to unsecured creditors. However, the code sets a minimum. This debtor, in our conversations, we chose to pay a little bit more to unsecured creditors than we otherwise had to. Partially, my mistaken belief that prior to the enactment of the Bankruptcy, Abuse Prevention, and Consumer Protection Act, that we had a de facto 36-month minimum plan. So we took the debtor's reasonable payment that she could reasonably make over a 36-month period. In retrospect, I might have chosen a 18-month period. And in future cases, that is the tactic we may go with. But you're willing to stand by that, Your Honor? Yes, we are, Your Honor. Is it your position that the disposable income is strictly based on this Form B-22C or just 22C, whatever it's called now? Yes, it is, Your Honor. Is that your position? That is our position. It comes from three different places. First, the obvious definition that the U.S. Congress placed at 1325B-2, exactly what disposable income was. It is current monthly income, the historical number, less certain reasonable expenses. It also comes from, if we take a look at Code Section 1129A-15, Chapter 11, Individual Reorganization, Congress specifically said in defining projected disposable income as the same as disposable income from Section 1325B-2. So this is a second place where Congress is saying we have the same term in two separate sections of the Bankruptcy Code, and therefore, they should be given equivalent weight. We also know that, I believe we cited to the Culhane and White article, that Congress knew the potential problem for using this historical income, and that information was provided to Congress by Chapter 13 trustees, and that despite having that knowledge, Congress still went forward using the historical perspective. Congress has a right to choose its format for going forward in bankruptcies. It chose to take this historical number as the best determination of what a debtor could do in the future. We used to have the actual or current income of a debtor, and that was never – that was presumed to be what the debtor would receive in the future. There's obviously no guarantee. We don't know what's going to happen in the future of any debtor. Kennedy. What's the purpose of this Schedules I and J now? Are they just redundant or under your position? Schedules I and J may be used in certain circumstances. For a modification of a plan, Schedule I certainly comes into play. Schedule J, for an above-median debtor, does not come into play unless and until we are looking at a modification of the plan. Schedule J and part of Schedule I may come into play where we have a debtor who is below the median income. So they're still applicable, but certainly in confirming a Chapter 13 plan, initially, Schedule I and Schedule J are excluded. They are not used. It's also important to understand that Schedule I includes certain income that Congress specifically excluded as income in bankruptcy matters, such as Social Security income. Section 10110A in defining current monthly income specifically excludes that income, so we should not use it. If we take a position that Schedules I and J should be utilized for confirmation purposes, we are now including that income, exactly what Congress did not want us to do. Is that what the trustee wants to do, to put in information from I and J? The Chapter 13 trustee, in this case, they were willing to take something less than I and J, but they wanted us to … But they're basing it on what's in I and J, right? They're basing their determination on the idea that I and J exceeds disposable income, and therefore, they wanted to take a reasonable number from that I and J difference and use that as a planned payment, whereas the code specifically states that the 1325B2 has no bearing upon plan funding itself. 1325B deals with payments to only two unsecured creditors. So if we were to take a position where I and J was used for confirmation purposes, then all the money that a debtor might have on I and J, which we can call actual income or current income, would then be used to pay unsecured creditors under the plan, leaving absolutely no money left over for administrative claims, adequate protection payments, and secured creditors. So the usage of I and J in and of itself creates a situation where every single Chapter 13 plan, or most plans, will automatically fail, unless the debtor has no secured creditors, adequate protection payments, but there will always be administrative claims that trustees themselves are paid as an administrative claim. Do you admit if it could be shown that there was a projected disposable income of more than a dollar, then you'd have to have a payout in 60 months? No, I do not, Your Honor. Now we're getting to a situation where we're talking about plan duration. Plan duration is only discussed in the Bankruptcy Code under Chapter 13 at Section 1322D, where for an above-median income debtor, the code states that the maximum duration of a plan or the maximum period of a plan will be 5 years. The term applicable commitment period for an above-median debtor is defined as not less than 5 years. So Your client comes above that figure, right, to start with. That's correct, Your Honor. My debtor is an above-median income debtor. So therefore, we know from the plan duration cannot exceed 5 years. It doesn't have to be that high. Are you saying it doesn't have to be that high? Just anything below 5 years? That's correct, Your Honor. That is our position. The term itself, applicable commitment period, is defined as not less than 5 years. By replacing the term applicable commitment period in 1325B with its definition, 5 years, the word period or duration no longer exists in that statute. In addition, because all we're trying to do is we're not determining what funding of this plan will be. We're only determining how much we're going to pay to the unsecured creditors in this plan. There's nowhere in the code that says that I can't use any of this income that I may have in excess of my disposable income to pay these creditors in a shorter period of time than 5 years. Thus, we also have to look at a situation where whose interest is best served by making applicable commitment period a multiplier or a temporal provision. Since we're only talking about funding unsecured creditors, the time value of money concept dictates that the creditor would rather receive their money in 10 months than in 60 months. If that's the case, most assuredly, unsecured creditors should not want applicable commitment period to be a temporal provision. They will receive less value of their money. They will receive the same dollar, but they will not receive the same value. They'll receive a lower value. Kennedy. But, counsel, once your Form 22B results in there being no projected disposable income, then the applicable commitment period is moot, isn't it? That is our position, Your Honor. If there is no disposable income, there is no commitment period. 5 years of paying zero is zero. That's correct, Your Honor. This so it's your position is that if the debtor chooses to make a payment, then any period of time is okay. You're not bound by any 1 year, 3, or 5, or anything else? So long as the plan is funded correctly. Section 1322D dictates, 1322 rather A, states that the debtor will use their future income or earnings to fund the plan. Not all of their future earnings. But the bankruptcy judge has to make the ongoing decision, right? Initially, Your Honor, part of what Congress did was take discretion away from judges. They did not want judges to have discretion to determine initially for confirmation how much needed to be paid in unsecured credit. So who makes that determination? Congress made that determination in 1325 by using the historical income. There is no discretion on anybody as far as what is the historical income. Either is money received within the 6 months prior to filing, within the 6 months ending on the last day of the month of receiving the filing, that this debtor earned, excluding certain income, such as Social Security. That's the end. If your client decided that she didn't really care about paying, didn't want to pay the $1,000 a month for 3 years, is there any way that that money could have been extracted from her? At confirmation, initially, no. It is my position as a debtor's counsel that Section 1329 on modification of a plan, courts are going to look at cause for modifying a plan. So if a debtor's income hasn't changed, and it's very important to note, and in deference to the United States position, the United States in its brief stated that the debtor's CMI position is approximately $6,800 per month, yet their I&J income was only $4,000 a month. That is a very disingenuous argument to this Court, because now you are comparing the debtor's gross income under for CMI versus the debtor's net income. If we look at the document, the debtor's gross income less taxes and insurance. So if we were to look at the debtor's gross income on Schedule I, it would be exactly the same in this case as the debtor's current monthly income, which is their gross income. This debtor is not trying to hide anything. This debtor is in the same position when we look at CMI, current monthly income, or Schedule I. And that's a very important difference from what the United States stated in its brief. During what period of time can it be modified, such as when your client would come up with a windfall? Say your client was a TV star or something, got a big contract. When there's a change in income, Your Honor. And is that over the three-year period of the payout, or is there any? Over the life of the plan. If during the life of the plan, there is a change. And let's remember, it is not just the trustee or an unsecured creditor who can come in and say, this debtor now has more income. Let's modify the plan. The same provision works for a debtor who comes in and says, well, I lost my job. I've been looking for a new job for a period of time. I can't find one. Or I found one with a significantly lower income. The debtor can also come in to modify their plan lower. But doesn't this give an incentive to your client not to seek a better job, seek a better life, take advantage of her second chance? Because if she does earn any more money, then the trustee will be coming in under the change of income under 1329, right? Your Honor, it does not frustrate my client's ability to move forward with their lives. Because it would be our position that the change that we're modifying to is a change from where we were to where we are. So if a debtor now has an additional $300 worth of monthly excess income, first of all, how much of that $300 is based upon income? How much of that $300 is based upon a change in living style? Maybe my debtor has decided, I lost my job. I'm not going to live in this apartment anymore that cost me $500 a month. I'm going to move to the $300 a month apartment. Should the modification punish the debtor who's trying to move forward by decreasing their expenses? We believe that any change would be based upon an increase in the debtor's income. Well, what's the bankruptcy judge's role in all of this? The bankruptcy judge's role in the confirmation process is to verify that the debtor's disposable income amount is correct. Trustees may obviously object to certain expenses. Not all expenses listed on the 22 form are based solely on the debtor's internal revenue service numbers for things such as transportation and things such as living expenses. Of course, we have debtors' taxes coming out of paycheck stubs, debtors who are participating in retirement plans and things of that nature that a trustee or a judge may review based upon a trustee's objection. When we receive our trustees' recommendations in Chapter 13 plans, at least in my plans, I am quite often required to prove up every single number that is on both Schedule J and the 22 form. Does the bankruptcy judge look at the party before the court, what the party's earnings are, the party's age, the party's dependence, and all the rest of it and making a decision as to whether to accept the plan? Not under the Bankruptcy Abuse Prevention and Consumer Protection Act, Your Honor. Congress intended to remove the discretion from the judge, and that's what they've accomplished by coming up with a formula and deciding that that formula is what is going to stand. As stated earlier, Congress knew that by using this formula, there would be changes that would result. So when the judge says three years is fine, you'd like a plan that was presented here? Yes, Your Honor. Yeah, the judge approved it. That's correct. Well, that's one function he has. Well, if he didn't want to prove it, he could say, well, four years or five years or whatever. The judge could rule that way. However, because the statute is very clear on its face that we project disposable income, that disposable income being the historical number. I believe Judge Haynes, in his recent article that I submitted to the court in my 28J letter, presents that projected means to project over a 12-month period or to annualize the debtor's disposable income so that the period that we're talking about is the same as five years or three years. We're talking annualized periods for the same. In the past, prior to Bankruptcy Abuse Prevention and Consumer Protection Act, we were projecting into the future what the debtor's actual income was, or I&J income. All we're doing now is replacing what that disposable income number is. It's no longer I&J. It is now 22C. So are you saying you take the figure that you derive at by following that latter approach, and then the trustee decides whether, the bankruptcy judge decides whether they're going to pay that total sum out over three years or four years or five years? The judge will confirm a plan if the numbers are appropriate, such that the unsecured creditors are being paid the specific dollar amount within the term of the plan. The term of the plan will also have to be able to pay the secured creditors and administrative claims and of those natures. So how does he decide whether it's three years, four years, or five years? The plan that the debtor proposes states what other creditors are being paid, creditors other than the unsecured creditors, states the amount that those creditors Can you say, no, three years is not long enough, let's make it four years? I don't believe that a judge would have that kind of discretion at this point in time If my plan funds in 36 months everyone that needs to be paid, I don't believe a judge can arbitrarily say, because this would be giving the judge discretion, you need to pay longer. And if a judge did have the authority to say you could pay longer, then I would have the authority to pay less, if that's what the statute said. Your Honors, I only have a few moments. In closing, what I would like to say is the strict construction of Section 1325b2 requires to pay, requires the debtors to pay what they can afford to unsecured creditors according to a specific formula set forth by Congress. Some debtors will pay a large distribution to these unsecured creditors. Some debtors will pay a small, or in my case, my debtor only is required to pay zero to unsecured creditors. This formula is exactly what Congress intended for us to use. I'm asking that you approve the code based on how it's written, not necessarily that we approve of the code. Judge Case, in the underlying matter, was clear that he did not necessarily approve of the code, but he did approve the code as it stood. All right, thanks. We'll hear some rebuttal. Just a few points, Your Honors, in rebuttal. Judge Pregerson had mentioned that we were talking about reality here when he was discussing this issue with debtors' counsel, and that is exactly the case. As a court from Oregon in the Mullen case said, Chapter 13 is not some alternate universe where reality dare not intrude. And what we have here, Your Honors, is a statute that's been amended by Congress in an attempt to have debtors who have the ability to pay, pay. They did that by including an applicable commitment period of 60 months or five years for debtors who were over-median income debtors. And in order to fund a 60-month plan, they included this idea of disposable income as a starting point, a floor, not a ceiling, but a floor, as the Court said in Risher, regarding what that projected amount would be. They understood that this disposable income definition contained in the statute would, in fact, possibly cause some problems, and they did that in order to resolve that possibility of that issue, they retained the prior bankruptcy code's version, projected disposable income. Again, I want to stress to the Court that projected disposable income and disposable income are not the same things. If we were to accept the debtor's position, we might as well strike that word right out of the code, because their version gives it absolutely no meaning. The trustee simply says that the number on Form 22C, the disposable income calculated with that backward-looking formula is a starting point. It is certainly not the end-all, be-all of what a debtor's plan payment would be or what should be contributed over the required duration of a plan of 60 months. In fact, the Debtor's Council mentioned Section 1322D, which says that a Chapter 13 plan shall not be more than five years. 1325B.4 says the plan for an over-median income shall not be less than five years. Well, if a plan can't be more than five years and it can't be less than five years, there seems to me only one logical conclusion, and that is it must be five years. And if a debtor has a negative disposable income number on Form 22C, yet they are required to be in a plan for five years, Congress has resolved that issue by including projected disposable income, not simply disposable income, but projected disposable income, which is required to be paid into the plan. Debtor's position also regarding the applicable commitment period attempts to carve some exception out of the applicable commitment period, which simply doesn't exist. How do you project it if you don't know what it is? Well, it's taking into account the starting as a floor, again, that disposable income number, looking at the income on Schedules I and J, looking at pay stubs, looking at tax returns. The important thing is to keep them on the look for five years. That is the plain language of the statute, Your Honor. Yes, indeed. That's why I asked you that. Yes, indeed. That is the plain language of the statute. And in order to fund that plan, we have to look at these other possible sources of income to determine what that projected disposable income number would be. And we certainly, we don't say that it's simply I and J, Schedules I and J, or it's simply disposable income. It's a floor, not a ceiling. If the projected disposable income were zero, even under your plan, would they still be required to drag it out for five years? If they had a projected disposable income, Your Honor, I don't think they would be eligible for Chapter 13 relief. They would have to be filed Chapter 7. Chapter 13 requires income, a regular source of income for a debtor to come in, from which they can make plan payments. If they had a zero projected disposable income, I don't see how they could make plan payments. How about answering Judge Sotomayor's question? If we determine that the projected disposable income of this debtor is zero, you still want a reversal of a plan that's anything less than five years, because that would allow the creditors a period of five years in which to reopen the case under 1329 to show a change of income. Well, Your Honors, I would like to remind the Court, as I'm sure you're aware, that we don't have an actual confirmed plan at this point. This isn't an electory appeal over the trustee's objection. But that would be the ultimate solution that you'd want. You want the commitment period to be five years, even if we determine that there's no projected disposable income? That — hopefully that wouldn't be the result, but certainly that we would at least prefer that this Court rule that the mandatory duration is five years. No plan can be either one day more or one day less than five years. The Code does say it shall be not less than five years and not more than five years. That is correct. Thank you. Thank you, Your Honors. All right. Thank you. And this matter will stand submitted. We'll go to the next, last case here. Garcia v. Dockery, trustee.
judges: Pregerson, Siler , Bea